**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PHILIP REGANO,** | ) | **Case Nos.      4:06CV3091** |
| | ) | **                    (4:05CR00437)** |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **JUDGE ANN ALDRICH** |
| | ) | **MAGISTRATE JUDGE BAUGHMAN** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| **Respondent.** | ) | |

Before the court is *pro se* petitioner Philip Regano's ("Regano") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  [Doc. No. 1.]  Respondent United States of America ("the government") has filed a response to the merits of Regano's motion [Doc. No. 7], and Regano filed a Memorandum of Law and Response.  [Doc. No. 13.]  For the reasons set forth below, the court denies Regano's motion.  Further, the court certifies pursuant to 28 U.S.C. § 2253(c)(1)(B) that an appeal from this order would not be well-taken.

## I.     Background

Regano, a financial planning consultant and securities salesperson, devised a scheme to defraud his clients by promising to invest their funds in securities, but instead converted them to his own use.  To mask his theft, he mailed his clients fraudulent financial documents indicating where he allegedly had invested their money.

On September 1, 2005, a federal grand jury in the Western District of Pennsylvania returned a one-count indictment charging Regano with mail fraud in violation of 18 U.S.C. § 1341.  Regano consented to transfer the case to the Northern District of Ohio and entered a plea of guilty in this

court on October 5, 2005.  On December 21, 2005, this court sentenced him to a term of 63 months imprisonment followed by 3 years of supervised release.  In addition, Regano was ordered to pay restitution in the amount of $2,532,072.06 and a $100.00 special assessment.

On December 26, 2006, Regano moved to vacate, set aside, or correct his sentence.  Raising several grounds for relief under ineffective assistance of counsel, Regano suggests that he did not knowingly enter into his plea bargain and that during sentencing, his counsel failed to raise the issue of prosecutorial misconduct, failed to object to false testimony made by government witnesses,[1] and failed to raise mitigating factors.  [Doc. No. 1.]

**II.     Standard of Review**

A petitioner that moves to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.  Generally, sentencing challenges not made on direct appeal are waived and cannot be made for the first time in a post-conviction § 2255 motion.  *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).  However, "challenges that cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance under the standard set forth in *Strickland v. Washington*."  *Id.*

To prevail on an ineffective assistance of counsel claim under the *Strickland* standard, a

_____

[1] Regano also alleges his counsel failed to prepare for victim impact statements and present defense witnesses during sentencing. Because these allegations relate to his claim that his counsel failed to object to false statements made by government witnesses, these allegations will be discussed together in section IV. B *infra*.

-2-

petitioner must establish (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The performance inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. "Prejudice is demonstrated when there is a reasonable probability that but for counsel's errors, the result would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.* at 694.

Finally, a pro se litigant is entitled to a liberal construction of his pleadings and filings. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). Accordingly, the court applies a less stringent standard to a pro se litigant's petition than it would apply to pleadings filed by a lawyer. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985). This standard, however, has limits and does not require the court to speculate about basic facts that could easily be alleged by the petitioner. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### III.    Plea Agreement

Regano suggests that he was induced to plead guilty based upon discussions between defense counsel and the Assistant United States Attorney ("AUSA"), from which defense counsel allegedly represented to Regano that the government would not object to a sentence recommendation at the low end of the sentencing guideline range. Regano alleges that the government broke the plea agreement at sentencing when it argued for a sentence at the high end of the range, and suggests that he would not have pled guilty if he knew that the government could do so.

In the context of guilty pleas, the first prong of the *Strickland* test is nothing more than a restatement of the standard of attorney competence: whether counsel's assistance was reasonable considering all the circumstances. *United States v. Allen*, 53 F. App'x 367, 372 (6th Cir. 2002). The second prong, the "prejudice" requirement, focuses on whether counsel's constitutionally ineffective

performance affected the outcome of the plea process.  *Id.*  In other words, to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would have not pled guilty and would have insisted on going to trial.  *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005).

Although it is necessary for a petitioner to allege that he would have insisted on trial but for counsel's errors, that allegation alone is ultimately insufficient to entitle the petitioner to relief. *Yarbrough v. United States*, No. 94-1380, 1995 U.S. App. LEXIS 7825, at *6 (6th Cir. Apr. 4, 1995); *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988) (finding defendant's testimony "subjective, self-serving, and in the Court's view insufficient to satisfy the Strickland requirement for prejudice").  Rather, a petitioner's allegations must have some factual basis.

For example, on the one hand, a defendant's repeated declarations of innocence prior to accepting a guilty plea do not prove that the defendant would not have accepted a guilty plea. *Griffin v. United States,* 330 F.3d 733, 738 (6th Cir. 2003).  On the other hand, a change in plea from not guilty to guilty is considered evidence supporting an assertion that a petitioner would have insisted on going to trial.  *See Swain v. United States*, 155 F. App'x 827, 832 (6th Cir. 2005) ("The strongest evidence that Swain would have insisted on going to trial but for counsel's erroneous advice is that she initially pleaded not guilty."); *Sullivan v. United States*, 11 F.3d 573, 576 (6th Cir. 1993).  Moreover, the Sixth Circuit has noted that "a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is evidence to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer."  *Griffin,* 330 F.3d at 738.  Using these cases as guideposts, the threshold of what constitutes a reasonable probability under the second prong of *Strickland* is apparent.

Either prong of *Strickland* is dispositive.  *Strickland,* 466 U.S. at 694.  Therefore, assuming

arguendo that the first prong is satisfied, Regano's claim for ineffective assistance of counsel fails because he cannot satisfy the second prong by showing  that "there is a reasonable probability that but for his counsel's errors, [he] would have not pleaded  guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland,* 466 U.S. at 697.

Other than unsupported suggestions from Regano that he would not have pled guilty, there is no other evidence before the court that supports this contention.  To the contrary, the strongest evidence that Regano  would have pled guilty is his behavior prior to his indictment and plea in which he evinced his desire to "come clean" by initiating  an investigation against himself.  The record shows that Regano initiated contact with the AUSA in Pittsburgh for the purpose of instituting this investigation.  (Sentencing Tr. at 13-14).  In addition, Allegheny Investments, Ltd., a securities company Regano used in his scheme, did not know the extent of the fraud until Regano, on his own accord, made a full and complete disclosure to the company prior to his indictment.  (Sentencing Tr. at 16).  This behavior does not suggest that Regano desired to plead not guilty.  Nor does it suggest that Regano initially desired to plead *not guilty* and subsequently changed his plea to *guilty,* thus supporting his assertion that he would have insisted on going to trial.  Furthermore, Regano faced a much harsher sentence than the one offered under his plea agreement.  Specifically, the indictment called for a maximum penalty of imprisonment of up to 20 years, but the penalty offered by the government in the plea agreement was within the range of 51-63 months.  This disparity, combined with Regano's efforts to come clean and his initial, and continuous, plea of guilty, create a reasonable probability that he would have accepted the government's plea agreement instead of going to trial.

Accordingly, Regano does not satisfy the second prong of *Strickland* and his collateral challenge to his plea agreement fails.

**IV.    Ineffective Assistance of Counsel**

      *A.    Failure to Raise the Issue of Prosecutorial Misconduct*

Regano believes that the government agreed not to object to a sentence recommendation at the low end of the sentencing guideline range and accordingly engaged in prosecutorial misconduct during sentencing when it denied making such an agreement.   Breach of a plea agreement is a nonconstitutional issue that could have been asserted on direct appeal.  *Stone v. Powell*, 428 U.S. 465, 477 (1976); *United States v. Frady*, 456 U.S. 152, 167-69 (1982).   When it is not so asserted, it may not be raised in collateral proceedings unless the applicant shows cause excusing his failure to raise it previously, and actual prejudice resulting from the alleged error. *Id*  Regano's petition asserts ineffective assistance of <u>his</u> counsel as the cause for the procedural default.   Accordingly, only ineffective assistance of <u>his</u> counsel is addressed.

To establish ineffective assistance of counsel under *Strickland*, Regano must show that but for counsel's failure to object to the government's denial of the terms of the agreement, the court would have sentenced Regano at the low end of the sentencing guideline range.  *See Strickland,* 466 U.S. at 668, 694.   However, in the context of a § 2255 motion, the Sixth Circuit has noted  that "[i]t is pure speculation whether the sentencing judge would have followed the government's . . . recommendation."  *Allen*, 53 F. App'x  at 377.

A  review of the sentencing transcript, however, shows that counsel told  the court that  the AUSA had agreed  not to oppose the low end application of the guideline range.  (Sentencing Tr. at 39).  Accordingly, Regano's assertion that counsel failed to object to the government's denial is unsupported by the record.

Further, even if defense counsel had failed to object, Regano cannot prevail on this issue because he cannot satisfy the second prong of *Strickland.*  Under the second prong of *Strickland*,

Regano must show that the results of the proceeding would be different, i.e. that the court would have sentenced Regano at the low end of the range.  Assuming that he relied on the alleged advice of counsel that the government agreed not to object to a sentencing recommendation at the low end of the range, there was no guarantee that the court would have followed the government's recommendation.  Thus Regano cannot show that but for counsel's failure to object to the government's denial of making this agreement, the court would have followed the government's recommendation and sentenced Regano at the low end of the range.  Accordingly, his claim fails both prongs of the *Strickland* test.

### B.    False Testimony

Regano also argues that his counsel was ineffective by failing to prepare for victim impact statements that were read at sentencing.  He further argues that his counsel's failure to object to false testimony from government witnesses during sentencing was prejudicial.  Specifically, Regano alleges that the testimony of Ms. Rousher, a government witness and wife of Regano's former client, misled the court when she failed to mention that she had settled her claim with Regano in arbitration.  Regano argues that counsel's failure to object to Ms. Rousher's testimony amounts to ineffective assistance of counsel.

Under *Strickland*, the court must determine whether, in light of all the circumstances, counsel's failure to object to the false testimony and failure to prepare for victim impact statements is outside the range of professionally competent assistance.  *See Strickland*, 466 U.S. at 688.  This requires Regano to show that counsel made errors "so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment."  *Id*.  However, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment if the error had no effect on the judgment.  Any deficiencies in counsel's performance must be prejudicial.  *Id*.

-7-

It is unclear what is meant by Regano's assertion that his counsel failed to prepare for victim impact statements. To the contrary, the record indicates that counsel did indeed prepare for these statements. Specifically, before sentencing, Regano's counsel received a copy of the pre-sentence report which clearly illustrated the tone and material aspects of the victim impact letters. Moreover, the pre-sentence report listed the amount of each victim's monetary loss, including whether the victim had subsequently received restitution. The record indicates that counsel reviewed the pre-sentence report and filed objections which specifically addressed which victims had received such restitution. [Doc. No. 7-2 at 48-9]. Further, at the sentencing hearing itself, defense counsel stated that Regano "actually paid back in excess what he took" from some of his victims. Moreover, well after the victim impact statements had been read, this court said "Mr. Devan, in my opinion, is very effective counsel." [Doc. 7-2 at 41]. Accordingly, counsel's performance cannot be considered outside the range of professionally competent assistance, and any suggestion that counsel was deficient for failing to object to, or prepare for, victim impact statements is unsupported by the record. Therefore, his claim based on failure to prepare for victim impact statements must fail.

Regano further alleges that his counsel was unprepared to deal with the "misleading and prejudicial statements" contained in Ms. Rousher's testimony. Regano fails to recognize, however, that prior to his sentencing, the court had reviewed Ms. Rousher's victim impact statement. (Sentencing Tr. at 6). Further, in his objection to the pre-sentence report, defense counsel specifically stated that Ms. Rousher had received settlement money as a result of an arbitration proceeding. Moreover, at sentencing, defense counsel addressed the disagreement over Ms. Rousher's claim. (Sentencing Tr. at 14-15, 22). Given that defense counsel filed objections to the pre-sentence report and raised the issue at sentencing, his performance cannot be considered outside the range of professionally competent assistance. Further, even if Regano could show that there had

been some deficiency, his claim would still fail the second prong of *Strickland* because he could not show that the alleged deficiency was prejudicial given that the court was already aware that Ms. Rousher's claim had been settled.  Accordingly, Regano cannot satisfy either prong of the *Strickland* test, and his claim regarding Ms. Rousher's testimony also fails.

### C.    Mitigating Factors

Regano believes that he should have received a reduced sentence due to the presence of various mitigating factors.  Specifically, he claims that he suffers from obsessive compulsive disorder, anxiety, panic attacks, stress disorder, alcohol addiction, and chronic gambling, the combination of which he believes impaired his judgment and motivated his behavior.  Regano claims that he received ineffective assistance of counsel because he believes that his counsel failed to raise these mitigating factors in the pre-sentence report and at sentencing.

Under *Strickland*,  the reasonableness of counsel's failure to raise the presence of mitigating factors must be determined  in light of all the circumstances**.**  In addition, the court should recognize that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland,* 466 U.S. at 690.  A petitioner challenging counsel's tactical decisions must overcome the presumption that such decisions might be considered sound strategy.  *Id*. at 689.  Hence, Regano must overcome the presumption that under these circumstances, the failure to raise the presence of mitigating factors might be considered sound strategy.

Before executing the plea agreement, Regano's counsel discussed Regano's various disorders, including his gambling addiction, with the AUSA.  The AUSA indicated that he would seek a higher base level and an upward departure if counsel sought a downward departure at

sentencing based upon Regano's gambling addiction and other mitigating factors.  (Government Exhibit A; Affidavit at pp. 1-2).  In spite of this warning, counsel briefly addressed several mitigating factors at sentencing: that Regano had stopped drinking, that several representatives from Gamblers Anonymous were present in support of Regano, that his criminal conduct was driven by addiction to gambling and alcohol, and that counsel had never seen anyone make such a "full and complete disclosure of everything he had done."  (Sentencing Tr. at 13, 17-18, 26).

Under the circumstances, counsel walked a fine line by mentioning the mitigating factors at sentencing without going so far as to actually argue them.  Given that the AUSA had warned counsel of the consequences of actually arguing these factors at sentencing, counsel's approach appears to be sound strategy.  Conceivably, if counsel had actually argued the mitigating factors at sentencing and the AUSA had sought an upward departure and a higher base level, Regano might have received a greater sentence.  Accordingly, Regano has failed to overcome the presumption that his counsel's decision not to argue mitigating factors was sound strategy and therefore, Regano cannot satisfy the first prong under *Strickland*.

## V.    CONCLUSION

Because the court has rejected all of Regano's grounds for relief, his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. No. 1.] is denied.  Further, because he has not made a substantial showing of the denial of any constitutional right, the court certifies pursuant to 28 U.S.C. § 2253(c)(1)(B), that an appeal from this order would not be well taken.

IT IS SO ORDERED.

*/s/ Ann Aldrich*
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: April 17, 2008**

-10-